NOTICE

Decision filed 07/09/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250029-U

NO. 5-25-0029

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* CAPITAL DEVELOPMENTAL BOARD, | ) ) ) | Appeal from the Circuit Court of Johnson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-LA-2 |
| BAYSINGER ARCHITECTS, PLLC; EVRARD-STRANG CONSTRUCTION, INC.; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) ) ) | |
| Defendants | ) ) | Honorable Sarah K. Tripp, |
| (Baysinger Architects, PLLC, Defendant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice Cates and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err by denying defendant's motion to dismiss and issuing a stay while the parties engaged in alternative dispute resolution. The circuit court erred by ordering the parties to participate in arbitration, where the contract expressly excluded arbitration as a form of alternative dispute resolution.

¶ 2    Defendant, Baysinger Architects, PLLC (Baysinger), appeals the Johnson County circuit court's order denying its motion for involuntary dismissal of the breach of contract action filed by Capital Development Board (CDB) and issuing a stay of the proceedings pending participation in arbitration by the parties. On appeal, Baysinger argues that it was entitled to dismissal as a matter

1

of law where the contract in question required the parties to engage in alternative dispute resolution (ADR) prior to the filing of a lawsuit. Baysinger also argues that the circuit court erred by ordering the parties to participate in arbitration where the contract expressly stated that ADR did not include arbitration. For the following reasons, we affirm in part and reverse and remand in part.

¶ 3                                    I. BACKGROUND

¶ 4      In 2015, CDB and Baysinger entered into a professional services contract No. 15001110 (the contract) for the replacement of the roofing systems at Shawnee Correctional Center. Additional agreements were entered into with Evrard-Strang Construction, Inc. (Evrard), which incorporated contract No. 15001110, and Travelers Casualty and Surety Company of America (Travelers), which was related as a surety to the placement of the roof. On February 2, 2024, CDB filed a verified complaint against Baysinger, Evrard, and Travelers, alleging a breach of the contract No. 15001110 related to the performance of the contract. Evrard (count II) and Travelers (count III) are not parties to this appeal and remain parties to the litigation.

¶ 5      In its general allegations, CDB alleged Baysinger was the architect/engineer for the roof replacement at the Shawnee Correctional Center, Evrard was the general contractor for the roof replacement, and Travelers held the performance bond in relation to the roof replacement. CDB alleged that in 2020, it discovered that the roof replacement "was unsuitable for use, and would never be suitable for use, due to deficiencies in Baysinger's design and Evrard's installation." As a result of the various breach of contract allegations, CDB alleged that it was required to dismantle the work and restart the roof replacement project. According to the complaint, "CDB requested all Defendants engage in mediation to resolve the controversy." Evrard responded that it would not agree to mediation. Travelers responded that it also would not participate in mediation, citing

2

Evrard's refusal to mediate. CDB sought relief in the form of the cost of repair of the replacement of the roof, plus attorney fees and costs.

¶ 6 On September 26, 2024, Baysinger filed a motion for involuntary dismissal of the entire complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)), contending that it was entitled to dismissal based upon the fact that the contract between CDB and Baysinger contained a mandatory alternative dispute resolution clause (ADR clause). Baysinger maintained that, under the terms of the contract, No. 15001110, ADR was a condition precedent to the filing of the lawsuit, and that CDB had not participated in ADR prior to filing the complaint. Notably, Evrard and Travelers did not join in this motion to dismiss, as neither party was a signatory to the contract.

¶ 7 Article 8 of the contract, No. 15001110, between CDB and Baysinger read, in pertinent part:

> "**8.1** **General.** Except as otherwise provided below, CDB will resolve disputes and its decision will prevail unless otherwise removed to a court of competent jurisdiction. Before any party files litigation it shall submit the dispute to ADR, and all parties and their subcontractors or agents who are involved in the dispute shall participate in the ADR. CDB expressly retains all rights under the Articles titled CDB Rights and Responsibilities and Termination and Suspension of the Agreement contained herein. CDB's exercise of its rights shall not be subject to ADR, but disputes concerning amounts due and owing are subject to ADR. Legal rights and remedies of any party that may be provided by law shall not be waived or tolled by participation in ADR, unless otherwise agreed in writing.
>
> ***
>
> **8.3** **Definitions.**
>
> A.   **Dispute:** Any contested claim or matter growing out of the project or CDB's project contracts regarding payment or time for performance, but not including personal injury cases (including worker injuries), vehicle accidents, contractor-subcontractor matters in the nature of lien actions, employment matters, contract suspension or termination, contractor prequalification suspension, or any other action on prequalification.

3

B. **Parties:** Parties to a dispute shall be defined broadly to include anyone who may have a stake in the dispute or whose participation is perceived as essential to resolution, whether or not there is a direct contractual relationship. Parties shall also include any other entity holding a contract with CDB whose performance of its contract relates in any way to the dispute or claim.

C. **ADR:** ADR is a process conducted with the assistance of a neutral person or persons the parties agree is unbiased and qualified to understand the dispute and make the determinations that may be required. Forms of ADR that may be utilized include, but are not limited to, mediation, mini-trials, a dispute resolution board, or resolution through expert opinion, but do not include arbitration or binding decisions.

8.4 **Cooperation.** In the event that disputes arise, CDB and [Baysinger] agree to exercise good faith efforts to resolve the matter fairly, amicably and in a timely manner. Litigation shall be considered as a last resort to be employed only when ADR methods fail. At the request of any party to a dispute, regardless of dollar amount, CDB and [Baysinger] agree to cooperate in resolution by first conferring with the other parties and by submitting the matter to ADR. CDB and [Baysinger] agree that ADR shall be a condition precedent to filing a Court action or administrative proceedings seeking economic recovery greater than $25,000. *** If the parties to the dispute cannot agree on a form for ADR or a neutral to facilitate the ADR, then CDB shall make the determination and its determination shall be final."

Baysinger further alleged that dismissal was warranted because "participation in ADR is a condition precedent to any litigation between the parties" and CDB has failed to satisfy this condition. Therefore, CDB's complaint must be dismissed as to Baysinger.

¶ 8 CDB filed a response to Baysinger's motion for involuntary dismissal. In its response, CDB raised three arguments. First, CDB argued that, based upon the language of the contract, ADR was not a condition precedent to the filing of the lawsuit. CDB maintained that article 8 applied only to disputes regarding terms of payment or time for performance of the contract, whereas the subject matter of the lawsuit against Baysinger was a claim for damages for the defective performance of the contract. CDB maintained that although it was not required to utilize ADR, it had requested all

4

of the parties to participate in ADR. Second, CDB argued, that even if ADR were required under the contract, Evrard and Travelers were necessary parties to the ADR as the contract indicated "all parties" must participate in ADR. Specifically, CDB pointed out that under section 8.1, "*all parties* and their subcontractors or agents who are involved in the dispute *shall participate* in the ADR." (Emphases added.) Compl. Ex. 1 at 10. CDB also noted that, under section 8.3(B) of the contract:

> "Parties to a dispute shall be defined broadly to include *anyone who may* have a stake in the dispute or whose participation is perceived as essential to resolution, whether or not there is a direct contractual relationship. Parties *shall also include any other entity holding* a contract with CDB whose performance of its contract relates in any way to the dispute or claim." *Id.*

CDB argued that Evrard and Travelers clearly had a stake in the outcome of the dispute involved, but they were not signatories to contract No. 15001110 which contained the ADR provision. Evrard and Travelers, however, refused to participate in ADR. Accordingly, CDB contended that further pursuit of ADR would have been impossible, and that courts do not require the performance of a futile act.

¶ 9    Third, CDB argued that Baysinger waived the ADR provision of the contract. CDB noted that it had offered mediation and that Baysinger expressed an interest, but when Evrard and Travelers refused to participate, CDB told Baysinger that it did not see how ADR would be accomplished. According to CDB, Baysinger was asked to provide a settlement proposal to resolve the litigation. Baysinger neither provided a settlement proposal nor asked CDB to participate in ADR under section 8.4 of the contract, thereby waiving its rights under article 8.

¶ 10    As a final alternative to dismissal, CDB requested the circuit court stay the proceedings and order all parties in the litigation to participate in ADR. In further support of its arguments that

5

ADR was impossible because it had been offered to the parties and refused, and in support of its waiver argument, CDB attached the affidavit of the deputy general counsel for CDB, Paul Kmett, who averred that on January 5, 2024, he had sent a letter to counsel for all of the parties (Baysinger, Evrard, and Travelers) indicating that CDB would be seeking money damages for the faulty construction and design work performed in relation to the Shawnee Correctional Center. The letter further indicated that "CDB's estimated damages are in excess of $4,500,000.00" and CDB would like "to enter into formal mediation of the matter in the coming weeks pursuant to Section 00 72 60 of the Standard Documents for Construction." The letter went on to offer the names and resumes of three mediators that CDB would accept and invited the parties to consider these individuals. The Kmett letter further stated, "The cost for mediation will be split evenly among the parties pursuant to our SDC's." Kmett requested that the parties provide a response to the letter "within seven calendar days, informing CDB of your willingness to enter into a tolling agreement or your willingness to enter into mediation. Should you choose to pursue mediation, please provide feedback on the proposed mediators and advise of your availability for mediation."

¶ 11 The Kmett affidavit alleged that subsequent to sending the letter, Kmett had a phone conversation with counsel for Baysinger, who was interested in participating in ADR. CDB, however, also received written communication from Evrard and Travelers that they would not participate in ADR. Baysinger did not respond to CDB's request for a proposal to settle CDB's claims.

¶ 12 The circuit court held a hearing on Baysinger's motion to dismiss on November 7, 2024.[1]

---

[1]No transcript of this hearing appears in the record. The docket entry is also absent from the record, however, a docket entry for this hearing appears online: https://www.judici.com/courts/cases/case_history.jsp?court=IL044015J&ocl=IL044015J,2024LA2,IL044 015JL2024LA2D1. "An appellate court may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of a case." *Godfrey Healthcare & Rehabilitation Center, LLC v. Toigo*, 2019 IL App (5th) 170473, ¶ 49.

6

The court took the matter under advisement. On December 20, 2024, the court made the following docket entry:

> "Court previously took under advisement D (Baysinger's) Motion for Involuntary Dismissal of Complaint pursuant to section 2-619. Court has reviewed the Arbitration Clause, Section 8 of the Professional Services Agreement. Court rejects P's interpretation of said Arbitration Clause that this action for damages for breach of contract does not qualify as a 'dispute' as defined in the agreement. Section 8.3(A) specifically defines 'Dispute' as 'Any contested claim OR matter growing out of the project OR CDB's project contacts [*sic*] regarding payment or time of performance[.]' The Court does not interpret that definition as relating only to matter or [*sic*] payment or time of performance, as alleged by Plaintiff. D's Motion to Dismiss is denied; however, Court finds that arbitration is required pursuant to the arbitration clause and this case shall be stayed pending Arbitration. It is so Ordered. This docket entry shall serve as Order of the Court. Clerk to transmit same to all parties."

¶ 13    On January 17, 2025, Baysinger filed this interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 14                                II. ANALYSIS

¶ 15    On appeal, Baysinger contends that the circuit court erred by denying its motion to dismiss under section 2-619(a)(9) of the Code. 735 ILCS 5/2-619(a)(9) (West 2022). That section provides a defendant may file a motion to dismiss the case or for other appropriate relief if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." *Id.* Because the contract between CDB and Baysinger states that "ADR shall be a condition precedent to filing a Court action *** seeking economic recovery greater than $25,000," and because CDB's complaint acknowledged that it did not engage in ADR prior to filing the lawsuit, Baysinger argues that "the proper remedy *** is dismissal, not merely a stay of proceedings." In response, CDB argues that Baysinger's failure to provide a complete record on appeal, specifically either a transcript, a bystander's report, or an agreed statement of facts regarding the November 7, 2024, hearing, precludes meaningful review of the circuit court's order.

7

CDB also argues the court erred in finding that the ADR provision applies to CDB's claim for damages, and, alternatively, the circuit court acted within its discretion when it stayed the proceedings while the parties engage in ADR. Baysinger also appeals the portion of the court order directing the parties to engage in arbitration, arguing that the contract expressly states that ADR does not include arbitration. CDB admits this was error. For the reasons that follow, we affirm in part and reverse in part.

¶ 16    "A section 2-619 motion 'admits the legal sufficiency of the plaintiffs' complaint but asserts an affirmative defense or another matter that avoids or defeats the plaintiffs' claim.' " *Village of Shiloh v. County of St. Clair*, 2023 IL App (5th) 220459, ¶ 21 (quoting *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). "A motion to dismiss pursuant to section 2-619 presents a question of law which is reviewed *de novo*." *Id.* (citing *DeLuna*, 223 Ill. 2d at 59).

¶ 17    As an initial matter, we consider CDB's claim that the record is incomplete and therefore precludes meaningful review. As noted above, a transcript for the November 7, 2024, hearing has not been submitted with the record on appeal. A docket entry by the court noted the attorneys present and stated the following: "Court takes up D (Baysinger) 2-619 MTD. Arguments heard. Court takes matter under advisement." At oral argument before this court, Baysinger's counsel stated that the hearing was "argument only" and CDB did not dispute this representation. Since the circuit court did not consider any evidence, and because its ruling is based solely upon the pleadings, which are a part of the record, this court finds that the record on appeal is sufficient to conduct a *de novo* review of the circuit court's decision.

¶ 18    We therefore turn to the merits of Baysinger's argument that the circuit court erred by denying its motion to dismiss. In support of its argument that dismissal is the proper remedy given the contract between Baysinger and CDB, Baysinger relies on *Stoll v. United Way of Champaign*

*County, Inc.*, 378 Ill. App. 3d 1048 (2008). In *Stoll*, the plaintiff was a former employee of the United Way who was terminated from her position. *Id.* at 1050. She sued the United Way, claiming that it had violated a memorandum of understanding between the United Way and her union regarding the disciplinary procedure to be used to correct employees' deficiencies. *Id.* at 1050-51. The United Way filed a 2-619 motion to dismiss, contending that the plaintiff lacked standing as she was neither a party to the memorandum nor a third-party beneficiary of the memorandum of understanding. *Id.* at 1051. The circuit court dismissed the suit and the appellate court affirmed. The *Stoll* court first concluded that the memorandum did not vest the plaintiff with contractual rights, as it was an agreement between the United Way and her union. *Id.* at 1052. The court also concluded that the memorandum was not written by the United Way for its employees and therefore was not a policy statement for the benefit of its employees that would create an enforceable contract right. *Id.* at 1052-53.

¶ 19    After noting that the memorandum of understanding was "unusual [in] nature" in that it defined "the working relationship between the United Way" and the union as "akin to a collective-bargaining agreement," and was "not a typical employment contract," the *Stoll* court "[a]ssum[ed] *arguendo*" that the plaintiff was a third-party beneficiary for the balance of its analysis. *Id.* at 1053-54. The memorandum contained a grievance procedure, and the *Stoll* court noted that the plaintiff failed to either avail herself of the grievance procedure or allege any facts establishing an exception that would excuse her failure to exhaust the contractual remedies. *Id.* at 1055. Specifically, the plaintiff failed to allege that the United Way repudiated the contractual dispute-resolution procedures or the futility of formally proceeding with the contractual remedies. *Id.* Furthermore, the *Stoll* opinion does not reflect whether the plaintiff requested a stay of the proceedings. For these reasons, the *Stoll* court found that the plaintiff was required to exhaust her administrative

9

remedies through the grievance procedure set forth in the memorandum. The circuit court properly dismissed the *Stoll* plaintiff's complaint.

¶ 20    We find Baysinger's reliance on *Stoll* misplaced. Most significantly, the plaintiff in *Stoll* never alleged that she attempted to utilize the grievance procedure, whereas CDB pled that it had asked the necessary parties to engage in mediation, and Evrard and Travelers declined. This allegation was supported by an affidavit signed by Paul Kmett, deputy general counsel for CDB, and Baysinger did not refute the facts set forth in the affidavit. Although Evrard and Travelers are not parties to the contract before this court, we note that the ADR provision of the contract contains a broadly written definition of "parties" which

> "include[s] anyone who may have a stake in the dispute or whose participation is perceived as essential to resolution, whether or not there is a direct contractual relationship. Parties shall also include any other entity holding a contract with CDB whose performance of its contract relates in any way to the dispute or claim."

¶ 21    Here, CDB expressly asked for a stay of the proceedings should the circuit court find that the ADR clause applies to CDB's claims. Further, in its response to Baysinger's motion to dismiss, CDB argued the futility of proceeding forward with the contractual condition of ADR, which would, if proved, act as an exception to CDB proceeding with the express terms of the contract. In *Stoll*, the plaintiff did not allege any facts that would have established an exception to the requirement that she exhaust her administrative remedies first. For these reasons, we find *Stoll* inapplicable to the current matter.

¶ 22    Here, the salient facts before this court are as follows: CDB sued Baysinger (and Evrard and Travelers) under its apparent belief that its lawsuit was not subject to the ADR clause in contract No. 15001110. Baysinger filed a 2-619 motion to dismiss alleging there was an affirmative matter that defeated CDB's claims, thus invoking the ADR clause as a condition precedent to the filing of the lawsuit. In its written response to Baysinger's motion to dismiss,

10

CDB opposed Baysinger's interpretation of the contract, and argued that the lawsuit was an action for damages and did not require ADR prior to the filing of the complaint. CDB also argued, in the alternative, that if ADR was required prior to the filing of the suit, ADR was futile as all of the parties essential to the resolution of the dispute refused to participate in the mediation. CDB supported its contention with an affidavit. Although Baysinger did not request a stay of the proceedings or move to compel CDB to engage in ADR, CDB requested a stay and an order compelling the parties in the litigation to engage in ADR. Baysinger's 2-619(a)(9) motion to dismiss CDB's claim was not an affirmative matter that defeated CDB's claim. 735 ILCS 5/2-619(a)(9) (West 2022). Accordingly, Baysinger's 2-619(a)(9) motion to dismiss fails.

¶ 23    We next consider whether the circuit court could order the parties herein to ADR. CDB requested a stay of the proceedings and an order compelling all defendants to engage in ADR. Under these circumstances, outright dismissal is not the only appropriate remedy; a stay may also be proper. Preliminarily, we note the parties agree that the circuit court erred when it ordered that they engage in arbitration, as the contract expressly excluded arbitration as a form of ADR. CDB agrees with Baysinger and characterizes the circuit court's reference to "arbitration" as likely a scrivener's error. We thus determine whether the circuit court could order the parties to engage in ADR.

¶ 24    Baysinger correctly notes that the contract specifically provided that the "[l]egal rights and remedies of any party that may be provided by law shall not be waived or tolled by participation in ADR, unless otherwise agreed in writing." Based upon this language, Baysinger argues that "[w]here the parties' agreement specifically provides that litigation would not be stayed, it was error for the court to decide otherwise." CDB disagrees with Baysinger's interpretation of the contract and responds that the contractual language "means simply that participation in ADR does

11

not waive any legal rights that a party may have, nor does participation in ADR toll the time period for a party to bring an action to enforce those rights." We agree with CDB and fail to see how that language precludes the issuance of a stay order. Baysinger negotiated for the right to participate in ADR prior to the filing of a lawsuit and invoked the ADR clause after the lawsuit was filed. A circuit court may exercise its discretion and stay the proceedings as part of its inherent authority to control the disposition of cases before it. *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 67-68 (2007). Furthermore, section 1-104(b) of the Code (735 ILCS 5/1-104(b) (West 2022)) and Illinois Supreme Court Rule 21(a) (eff. Jan. 21, 2023) grant the circuit courts discretion to make rules to control their calendars, and regulate their dockets and business. Therefore, the trial court had the authority to issue the stay requested by CDB and did not abuse its discretion in ordering the parties to ADR.

¶ 25    Indeed, CDB may now be able to engage all parties in ADR as a result of Baysinger invoking the ADR clause of the contract because all of the parties, including Evrard and Travelers, are before the circuit court as defendants in this matter. The First Judicial Circuit has enacted local rules which include a mediation program. See 1st Judicial Cir. Ct. Rs. Art. VIII, Mediation – Civil Actions (April 2, 2023). "Court ordered mediation shall be available, at the discretion of the judge presiding over the case, in all civil actions." *Id.* R. 8.1(A). Additionally, "upon the Court's own motion, the judge presiding over the case may assign the case to court ordered mediation. Upon assignment for mediation, all further action in the case shall be stayed until mediation is complete." *Id.* R. 8.1(B).

¶ 26    It is not clear from the circuit court's order whether all named defendants, as "the parties," were to participate in the circuit court's order. The court's order states, "Court finds that arbitration is required pursuant to the arbitration clause and this case shall be stayed pending Arbitration," but

12

the order does not state who shall be included in the ADR process. CDB took the position that Evrard and Travelers should participate in the ADR process, as the contract definition was broad, as follows: "Parties to a dispute shall be defined broadly to include anyone who may have a stake in the dispute or whose participation is perceived as essential to resolution, whether or not there is a direct contractual relationship. Parties shall also include any other entity holding a contract with CDB whose performance of its contract relates in any way to the dispute or claim." Upon remand, the circuit court shall clarify which parties shall be ordered to participate in ADR.

¶ 27 In summary, the trial court had the authority to issue the stay requested by CDB and did not abuse its discretion by ordering all of the parties to participate in ADR. The court, however, erred in ordering the parties to participate in arbitration instead of ADR. Accordingly, we affirm the circuit court's denial of Baysinger's motion to dismiss and the granting of the stay of the proceedings pending participation by "the parties" in ADR. We remand with directions to the circuit court to clarify that the ADR shall not include arbitration, and to specify which parties shall proceed with ADR during the stay of proceedings.

¶ 28                                III. CONCLUSION

¶ 29 For these reasons, the judgment of the Johnson County circuit court is affirmed in part and reversed and remanded in part, with directions.

¶ 30 Affirmed in part; reversed and remanded in part with directions.